**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**EUGENE DIVISION**

| | | |
|---|---|---|
| **HUNTER E. RANIER,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:11-cv-06296-SI |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Drew L. Johnson, 1700 Valley River Dr., Eugene, OR 97401; John E. Haapala, 410 E. 10th Ave., Suite 240, Eugene, OR 97401. Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; David Morado, Regional Chief Counsel, Region X, and Matthew W. Pile, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 1301 Young Street, Suite A-702, Dallas, TX 75202.  Attorneys for Defendant.

**SIMON, District Judge**.

Hunter Ranier seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Because the Commissioner's decision was not supported by substantial evidence, the decision is reversed and this case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

## I.    BACKGROUND

**A.    The Application**

Mr. Ranier is a 27 year-old man with a high school education, some college, and past work experience as a security guard, counselor, ranch hand, and recess monitor. Tr. 58, 107, 254, 271. He applied for DIB and SSI on August 22, 2007, alleging disability due to scleroderma, mixed connective tissue disease, osteoarthritis, Sjorgen's Syndrome, Reynaud's Syndrome, and auto immune disorders. Tr. 273. The Commissioner denied Mr. Ranier's application initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 117, 122. An administrative hearing was held on November 18, 2009, and a supplemental hearing was held on December 4, 2009.  Tr. 134, 38-52.  The ALJ found Mr. Ranier not to be disabled. Tr. 31. The Appeals Council denied Mr. Ranier's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 2. Mr. Ranier now seeks judicial review of that decision.

**B.    The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?"  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit.  20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.      The ALJ's Decision

The ALJ performed the sequential analysis. At step one, the ALJ found that Mr. Ranier had not engaged in substantial gainful activity since December 20, 2006. Tr. 23. At step two, the ALJ concluded that Mr. Ranier had the following severe impairments: spinal spondylosis, personality disorder, and depression. *Id.* At step three, the ALJ determined that Mr. Ranier did

not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 24.

The ALJ next assessed Mr. Ranier's residual functional capacity ("RFC") and found that he could perform a range of light work in a nonpublic work environment with minimum contact with others if he avoids concentrated exposure to humidity, fumes, odors, dusts, and gases, and avoids poor ventilation. Tr. 25.  At step four, the ALJ found that Mr. Ranier was unable to perform his past relevant work as a security guard. Tr. 30. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Mr. Ranier could perform other work available in the national economy, such as bench assembler, packing line worker, or final inspector. Tr. 31.  Accordingly, the ALJ ruled that Mr. Ranier was not disabled. *Id.*

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by

isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th

Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation

marks omitted)). The reviewing court may not affirm the Commissioner on a ground upon which

the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing

*SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## III.    DISCUSSION

Mr. Ranier argues that the ALJ erred by: (1) improperly concluding that Mr. Ranier's

pain testimony was not credible; (2) improperly discrediting the medical opinions of

Drs. Considine, Press,  Gandler, and Grosscup; and (3) providing an incomplete hypothetical to

the VE.  The Court finds that the ALJ's rejection of Drs. Press, Gandler, and Grosscup was not

supported by substantial evidence in the record and accordingly reverses the ALJ's decision and

remands for further proceedings.

### A.    Credibility Determination

Mr. Ranier stated in his Disability Report,

> I can't sit, walk or stand depending on how bad my back is.  I get spasms that make me
> pull over when I drive. I get bone pain in the tops of your [sic] hands and feet. I get really
> bad chest pains. I get hot quickly. My auto immune disease makes me feel hot fast. I get
> light headed and dizzy. I end up throwing up, getting diarrea [sic] and I can't eat. There
> are days when I cannot even get out of bed. I can't take Vicodin or any other over the
> counter pain killers because the side effects of my medication. I lost 20 lbs because I
> haven't been able to eat.

Tr. 273. While testifying before the ALJ, Mr. Ranier alleged "disabling mental symptoms"

affecting his ability to work, including severe depression, Post Traumatic Stress Disorder

("PTSD"), "severe anger issues, anti-socialness, and disassociativeness, and authority issues."

Tr. 26, 73-74, 76. Mr. Ranier further testified that he was "having severe problems" with his

shoulder and that he was unable to work due to severe pain and fatigue, that his daily pain level

was an eight on a scale of one to ten, and that he had migraines "every other day guaranteed" that "never go away." Tr. 60, 62, 69-70. He alleged back spasms, severe pain in his lower back, upper back, and knees, and swelling in his knees, ankles, hands, and feet. Tr. 62. Mr. Ranier also testified that he was "incapable of writing anymore" due to stiffness in his hands and that he spends a lot of time sleeping to try and deal with his pain. Tr. 63. He stated that he falls asleep about two to three times a day and remains asleep "anywhere from 30 minutes to about two to three hours" due to severe pain and extreme exhaustion. Tr. 67. Mr. Ranier also stated that he fidgets every five minutes, that he can only stand for five minutes, and that he is capable of sitting for a half hour before he needs to "get up and stand or walk around a little bit." Tr. 66. Mr. Ranier testified that he can only walk for about ten to fifteen minutes at a time. *Id.*

Mr. Ranier argues that the ALJ improperly discredited his subjective pain testimony. Pl. Br. 5. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036.  It is "not

sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities and work history. *Smolen*, 80 F.3d at 1284. The ALJ may also consider observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Id*. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ rejected Mr. Ranier's subjective pain testimony to the extent that it conflicted with the RFC. Tr. 26. First, the ALJ found that Mr. Ranier's daily activities were inconsistent with the disabling nature of his alleged symptoms, and clearly belie his statement, "I don't do anything." Tr. 341. Mr. Ranier testified that he is able to perform household chores including vacuuming and doing laundry; and that he goes camping once a year and goes to Disneyland frequently. Tr. 68, 357. His daily activities also included driving a car, using the internet, meeting friends for ice cream, running errands with his mother, and playing paintball. Tr. 77, 286-291. Mr. Ranier's mother confirmed in her testimony that her son performs these activities. Tr. 303-306. The ALJ noted that Mr. Ranier went on a vacation since the alleged onset date, and that during this vacation, Mr. Ranier's symptoms were dramatically reduced. Tr. 26, 689. The ALJ reasonably inferred from these facts about Mr. Ranier's activities of daily living that his conditions were not as severe as alleged. The ALJ thus provided specific and clear and convincing reasons for discrediting Mr. Ranier's testimony. *Dean v. Comm'r,* 2013 WL 98546, at *1 (9th Cir. Jan. 9, 2013) (unpublished) (ALJ's finding that claimant could "perform a full range of daily activities which is inconsistent with the nature, severity and subjective complaints of the complaint" was a clear and convincing reason to discredit claimant's testimony).

The ALJ also noted that Mr. Ranier made inconsistent statements regarding his allegedly disabling impairments. At the first hearing, Mr. Ranier stated through his representative that there was no evidence of fibromyalgia, Reynaud's Syndrom, or Sjogren's syndrome. Tr. 27, 43, 83. Later, however, Mr. Ranier testified to the ALJ that he suffered from these impairments. Tr. 71, 83. Mr. Ranier also testified that he had severe chest pain due to mitral valve prolapse, but admitted that the tests administered on his heart to check for mitral valve prolapse were all negative. Tr. 72. The ALJ thus had further reason to doubt Mr. Ranier's credibility. *Smolen*, 80

F.3d at 1284 (in evaluating credibility, the ALJ may consider a claimant's prior inconsistent statements regarding his symptoms). The ALJ also cited evidence in the record of Mr. Ranier's failure to seek treatment and his non-compliance with treatment. Tr. 26, 781. Despite Mr. Ranier's complaints of disabling mental symptoms, the record showed that he refused to be evaluated for psychiatric medication and has generally refused to take any psychiatric medications. Tr. 601, 688, 855. Additionally, Mr. Ranier refused to comply with a recommendation that he stop smoking because of his mild asthma. *Id.* The Ninth Circuit has stated that it is the claimant's burden adequately to explain any failure to follow a prescribed course of treatment. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) (claimant's failure to explain failure to seek treatment or follow a prescribed course of treatment can "cast doubt" on the sincerity of the claimant's testimony); *see also Smolen*, 80 F.3d at 1293. Mr. Ranier offered no such explanation. The ALJ reasonably inferred that Mr. Ranier's symptoms may not have been as limiting as he alleged, which in turn supports the ALJ's credibility finding. *Id.*

In sum, the ALJ provided specific and clear and convincing reasons for discounting Mr. Ranier's subjective symptom testimony. The ALJ's decision to discredit Mr. Ranier's testimony to the extent that it conflicted with the RFC was thus legally sound and supported by substantial evidence in the record. The Court upholds the ALJ's credibility ruling.[1]

---

1 The ALJ also found that Mr. Ranier's analgesic medication history was inconsistent with his claimed severity of pain, because he had "never been maintained on a regular prescription of strong analgesics such as morphine, methadone, Fentanyl or Oxycontin." Tr. 26. Mr. Ranier challenges this assertion because of the evidence in the record that he suffered "debilitating side effects" of medication, including vomiting, diarrhea, blurry vision, and an inability to concentrate. Tr. 77-78, 330-35, 684; Pl. R. Br. 8. If the ALJ erred by concluding that Mr. Ranier was not credible based on inconsistency with Mr. Ranier's medication regime and his subjective symptom testimony, that error was harmless because the ALJ provided other clear and convincing reasons for rejecting Mr. Ranier's testimony. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (a single erroneous basis for an ALJ's determination is harmless error if other valid reasons supporting that determination remain).

**B.**    **Medical Evidence**

Mr. Ranier argues that the ALJ improperly rejected the medical opinions of

Drs. Considine, Press, Gandler, and Grosscup. The ALJ is responsible for resolving conflicts in

the medical record, including conflicts among physicians' opinions.  *Carmickle v. Comm'r*, 533

F.3d 1155, 1164 (9th Cir. 2008).  The Ninth Circuit distinguishes between the opinions of three

types of physicians:  treating physicians, examining physicians, and non-examining physicians.

The opinions of treating physicians are generally accorded greater weight than the opinions of

non-treating physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating doctor's

opinion that is not contradicted by the opinion of another physician can be rejected only for

"clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ

must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion.

*Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  In addition, the ALJ generally must

accord greater weight to the opinion of an examining physician than that of a non-examining

physician.  *Lester*, 81 F.3d at 830.  As is the case with the opinion of a treating physician, the

ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an

examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  If the opinion of an

examining physician is contradicted by another physician's opinion, the ALJ must provide

"specific, legitimate reasons" for discrediting the examining physician's opinion.  *Lester*, 81 F.3d

at 830.  Specific, legitimate reasons for rejecting a physician's opinion may include its reliance

on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035,

1034 (9th Cir. 1995). Credibility determinations also bear on evaluations of medical evidence

when an ALJ is presented with conflicting medical opinions. *Webb v. Barnhart*, 433 F.3d 683,

688 (9th Cir. 2005).

### 1. Dr. Kevin Considine

Mr. Ranier argues that the ALJ improperly rejected the opinion of osteopath

Dr. Considine regarding Mr. Ranier's rheumatologic impairments. Dr. Considine, Mr. Ranier's

primary care physician since childhood, diagnosed Mr. Ranier with a "not narrowly determined

type of mixed connective tissue disorder and/or rheumatologic condition." Tr. 64, 539. Dr.

Considine opined that Mr. Ranier was disabled by his combination of impairments and thus was

unable to work.  Tr. 412, 539.

The ALJ gave little weight to Dr. Considine's opinion. The ALJ instead assigned

"significant weight" to the opinion of Dr. Lawrence Sherman, a medical expert who testified at

the hearing. Tr. 28, 91-92. Dr. Sherman evaluated the lab reports performed by Mr. Ranier's

treating physicians for connective tissue disease and opined that the results were "ambiguous"

because the results were largely normal and only one test showed an elevated rheumatoid factor

indicative of an inflammatory problem. Tr. 51. Based on the overwhelming quantity of normal

lab tests, Dr. Sherman concluded that it was "very unlikely that any of [Mr. Ranier's alleged

diseases] are involved." Tr. 45, 47-50, 86.

After evaluating Mr. Ranier's immunology study, which tested for a rheumatoid

condition, Dr. Sherman opined that Mr. Ranier's pain was "not caused" by an autoimmune

disease, that he had no significant orthopedic condition, and that there was no evidence of

fibromyalgia, Reynaud's Syndrome, or Sjogren's syndrome. Tr. 27, 51. Dr. Sherman opined that

Mr. Ranier's only limitations established in the record were that he could lift and carry no more

than ten pounds frequently and no more than 20 pounds occasionally, and that he could sit, stand, and walk for no more than six hours out of an eight hour day. *Id.* Dr. Sherman's opinion thus contradicted the opinion of Dr. Considine, and the ALJ was required to give specific, legitimate reasons for rejecting it. *Lester*, 81 F.3d at 830.

The ALJ provided specific, legitimate reasons for rejecting Dr. Considine's opinion. Dr. Considine relied heavily on Mr. Ranier's subjective reports of symptoms and limitations. Tr. 26, 674-693, 771-813. As the ALJ noted, it was "unclear from the record who has diagnosed the claimant with [his alleged] disorders. The records suggest that the claimant tells one doctor that the other doctor has diagnosed him with a particular malady and so that diagnosis becomes part of the other doctor's records and so on." Specific and legitimate reasons for rejecting an opinion include its reliance on a claimant's discredited subjective complaints, and the ALJ may rely on an adverse credibility determination when weighing medical evidence. *Webb*, 433 F.3d at 688; *Tommasetti*, 533 F.3d at 1040. Because the ALJ properly found that Mr. Ranier was not credible, the ALJ had specific, legitimate reasons to discredit Dr. Considine's opinion.[2]

### 2. Dr. Raymond Press

Dr. Press, Mr. Ranier's rheumatologist, diagnosed Mr. Ranier with osteoarthritis, Sjogren's Syndrome, Raynaud's Syndrome, mixed connective tissue disease, and severe fibromyalgia. Tr. 684. Dr. Press opined that "[t]hese diagnoses were based upon the findings obtained through x-rays, MRI's, CAT scans, and blood work." *Id.* Dr. Press opined that

---

2 The ALJ also noted that Dr. Considine's opinion did not identify any specific functional limitations; rather, his opinion was conclusory as to the issue of Mr. Ranier's ability to work. Tr. 412. While determinations regarding a claimant's ability to work are reserved for the Commissioner, 20 C.F.R. § 404.1527(d)(2); SSR 96-5p, the ALJ must give specific and legitimate reasons supported by substantial evidence in the record for rejecting a treating physician's controverted opinion on disability. *Reddick*, 157 F.3d at 725. As discussed above, Dr. Sherman's opinion contradicted Dr. Considine's opinion that Mr. Ranier was disabled by his combination of impairments. The ALJ thus provided specific, legitimate reasons for rejecting Dr. Considine's opinion.

Mr. Ranier was unable to work, that Mr. Ranier was unable to sustain even part time

employment, and that his condition would not change. Tr. 691. Mr. Ranier argues that

Dr. Press's treatment notes support both the diagnosis of rheumatologic impairment and its

disabling severity.  Pl. Br. 8; Tr. 684, 687, 880.

     The ALJ gave "little weight" Dr. Press' opinions, finding them to be conclusory, and

contradicted by Dr. Sherman. Tr. 29. Determinations regarding a claimant's ability to work are

reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-5p.

Because Dr. Press was a treating physician, however, the ALJ was required to provide specific,

legitimate reasons for rejecting even his conclusory, but controverted, opinions. *Id.*

     The ALJ stated several reasons for rejecting Dr. Press' opinion: she found that the record

was devoid of testing to support Dr. Press' diagnoses; that there was no trigger point test

necessary to substantiate a fibromyalgia diagnosis; that much of Dr. Press' report was merely an

incomplete summary of  Dr. Considine's records; and that Dr. Press omitted significant facts in

purporting to describe Dr. Considine's care of Mr. Ranier. Tr. 26-29, 94. The ALJ concluded that

Dr. Press' "reports fail to reveal the type of significant clinical and laboratory abnormalities one

would expect if the claimant were in fact disabled." Tr. 26.

     While objective diagnoses and observations are the most important parts of a physician's

reports, the ALJ's reliance on the inability of physicians to support their opinions with objective

laboratory findings does not constitute sufficient reason for rejecting their subjective

conclusions. *Rodriguez v. Bowen*, 876 F.2d 759 (9th Cir. 1989). Moreover, fibromyalgia is

diagnosed entirely on the basis of a patient's report of pain and other symptoms, and there are no

laboratory tests to confirm the diagnosis. *Benecke*, 379 F.3d at 589. The ALJ's reasons for

rejecting Dr. Press' opinion were legally insufficient.

### 3.  Dr. Gandler

The ALJ did not have the opportunity to review the treatment notes from Dr. Gandler because they were added to the record by the Appeals Council after the ALJ rendered her decision. Tr. 2, 867-872, 874-895. Dr. Gandler also evaluated Mr. Ranier and found 18 out of 18 fibromyalgia points positive. Tr. 882. He wrote, "Ms. Ranier easily meets the 1990 classification criteria for fibromyalgia." *Id.* Dr. Gandler opined that Mr. Ranier's spinal chord injuries relate to his fibromyalgia diagnosis. Tr. 880. He concluded that "[t]here is no activity, let alone work activity, that Mr. Ranier can perform on a real work schedule." *Id.* Dr. Gandler's treatment notes closely reflect those of Dr. Press. Pl. Br. 10; Tr. 874-95. Mr. Ranier argues that Dr. Gandler's treatment notes support both the diagnosis of rheumatologic impairment and its disabling severity.  Pl. Br. 8; Tr. 684, 687, 880.

Dr. Gandler's opinion that Mr. Ranier has fibromyalgia was contradicted by Dr. Sherman's opinion, and the ALJ thus was required to provide specific and clear and convincing reasons for rejecting it. Because Dr. Gandler's opinion was substantially similar to Dr. Press' opinion, the reasons for rejecting Dr. Press' opinion are also legally insufficient to reject Dr. Gandler's opinion. Thus, the rejection of Dr. Gandler's opinion was error.

### 4.  Dr. Sally Grosscup

Dr. Grosscup evaluated Mr. Ranier in 2011 and her opinion, which was added to the record by the Appeals Council in August, 2011, was not before the ALJ at the time of the hearing.  Tr. 2. Dr. Grosscup assessed Mr. Ranier with a Global Assessment Functioning ("GAF") score of 45, indicating serious impairments in occupational functioning. Tr. 867.  She diagnosed Mr. Ranier with bipolar mood disorder, anxiety, depression, and PTSD, and opined that these mental impairments caused symptoms including mood disturbance, emotional lability,

panic attacks, oddities of thought, social withdrawal, blunt or inappropriate affect, decreased

energy, paranoia, and intrusive persistent irrational fears. *Id*.; Tr. 870-71. Dr. Grosscup opined

that Mr. Ranier's symptoms "would grossly interfere with working at a regular job." Tr. 872.

The Court must consider new evidence added to the record when determining whether

the ALJ's conclusion was supported by substantial evidence. *See Taylor v. Comm'r*, 659 F.3d

1228, 1231-33 (9th Cir. 2011). In *Taylor*, the Court ordered a remand based on its review of new

evidence, stating that the Court may "consider [a] physician's opinion . . . to determine whether,

in light of the record as a whole, the ALJ's decision was supported by substantial evidence and

was free of legal error." *Id*. at 1232.

The Court has independently reviewed Dr. Grosscup's opinion. Remand to the ALJ is

appropriate because Dr. Grosscup's report was added to the record, and the record now contains

significant evidence favorable to Mr. Ranier's application. Specifically, the ALJ did not have an

opportunity to consider Dr. Grosscup's opinion on Mr. Ranier's mental health limitations. S*ee

Taylor,* 659 F.3d at 1231-1233. Dr. Grosscup's evidence is especially important because, when

considered in combination with Mr. Ranier's other impairments, it could constitute a significant

impairment at step two. As such, it is no longer clear that the ALJ's decision at step two is

accurate and that the ALJ's ultimate non-disability determination is supported by substantial

evidence. Because Dr. Grosscup's opinion was not before the ALJ, the ALJ should have the

benefit of reconsidering her determination in light of Dr. Grosscup's opinion.

## C.    Remand

As discussed above, the ALJ's rejection of Dr. Press' opinion was error. Moreoever,

Mr. Ranier submitted new evidence to the Appeals Council that was added to the record, and the

ALJ did not have the opportunity to consider that evidence. In light of the new evidence from

Drs. Gandler and Grosscup, which now must be considered, the ALJ's findings are not supported by substantial evidence. Because the record needs further development, the Court concludes that there are outstanding issues that must be resolved before a determination of disability can be made. The ALJ should have the benefit of reconsidering the findings with regard to Dr. Press's opinion and the new evidence in the record and, if necessary, develop a new RFC and receive new testimony from the VE.

## IV.    CONCLUSION

The ALJ properly rejected Mr. Ranier's testimony and the opinion of Dr. Considine. The ALJ's rejection of the opinions of Drs. Press, Gandler, and Grosscup, however, was not supported by substantial evidence. The Commissioner's decision that Mr. Ranier is not disabled is therefore REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED this 29th day of April, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge